## FRANK MORGAN v. M. E. TUCKER.

October Term, 1904.

Present: ROWELL, C. J., TYLER, MUNSON, WATSON, and HASELTON, JJ.

Opinion filed August 15, 1905.

### Contracts—Inability to Fully Perform—Further Performance Forbidden—Effect.

One party to a contract cannot, to prevent anticipated loss, stop performance by the other party, without becoming accountable for the damages caused by the interruption.

In an action for breach of contract, it appeared that, for a stipulated price per thousand feet, plaintiff agreed with defendant to cut and deliver at defendant's mill all the saw logs on certain

land, and to complete the work by May 1. Plaintiff's evidence tended to show that on March 13, and while he was drawing the logs which he then had cut, there came a heavy thaw, which destroyed that season's sledding, and forced plaintiff to cease drawing the logs which he then had cut, and to resume chopping; whereupon defendant forbade plaintiff to do any further cutting till he had delivered the logs then cut, and thereupon plaintiff did no more cutting and never completed the job. *Held,* that this evidence tended to place the responsibility for the nonperformance of the contract on defendant; that even if plaintiff's previous management made it morally certain that the logs would not be drawn, it could not be said that he had put it out of his power to perform, and, therefore, it was error to direct a verdict for the defendant.

GENERAL AND SPECIAL ASSUMPSIT. Pleas, the general issue with notice, and payment. Trial by jury at the December Term, 1903, Lamoille County, *Start,* J., presiding. Verdict ordered for the defendant, and judgment thereon. The plaintiff excepted. The special count in the declaration was for breach of the logging contract mentioned in the opinion.

*B. A. Hunt* for the plaintiff.

*Thomas C. Cheney* for the defendant.

MUNSON, J. Plaintiff agreed with defendant to cut and deliver at defendant's mill all the saw logs standing on certain land, and to have the job completed by May first, 1902. The plaintiff did not complete the job, and did practically nothing on it after March thirteenth, the date of a heavy thaw. The plaintiff claimed that the defendant forbade further chopping, and thus prevented the completion of the job. A verdict was directed for the defendant.

The evidence of the plaintiff tended to show that to have continued drawing at that time would have spoiled the roads,

and that for that reason he proposed to stop drawing and resume the work of cutting and skidding; that thereupon the defendant said he had rather have the timber standing than down, and that he didn't want the plaintiff to cut any more until he had got all that was down drawn in; that upon this plaintiff told defendant he couldn't keep his men idle, and if he couldn't cut and skid he should have to turn them off; that defendant replied that he couldn't help it—he didn't want any more cut; and that because of this plaintiff discharged his men and did no more cutting.

This evidence tended to place the responsibility for the non-performance of the contract on the defendant, unless its effect was controlled by other matters disclosed by the testimony. It appeared from the plaintiff's cross-examination that he had his roads all made, and had worked on the least accessible part; that he had about two hundred logs cut that were not drawn, and that there were about one thousand more to cut; that the sledding in fact broke up with this thaw; that he went back a little later and tried to draw, but that the roads were bad and he couldn't accomplish much; that if the weather had turned he might have finished with the help he had in three or four weeks, and that he could have put on more teams if the logs were cut ready to draw; that it injures spruce logs some to lie in the woods, and that the defendant gave as a reason why he wanted no more cut that he was afraid they would lie there. The plaintiff's answers in direct and cross-examination as to what he could have done or expected to do were inconsistent, evidently influenced by the questions, and not such that one can be considered explanatory and corrective of the other.

The plaintiff had over six weeks left in which to complete the contract. The cutting was the first step in the work

to be done.  Any interference with this might prevent a per-
formance, whatever the opportunities afforded by later con-
ditions.  A heavy fall of snow with a prolonged season of
cold might even then have enabled the plaintiff to finish the
drawing on runners.  It was not beyond the bounds of possi-
bility that he might finish it on wheels over poor roads.  The
effect of his previous failures to advance the work could be
overcome by the employment of a larger force.  The terms of
the contract were such that he could complete the work at a
considerable loss and still gain in the final settlement.  Even
if his previous management made it morally certain that the
drawing would not be done, it could not be said that he had
put it out of his power to perform.

The defendant could not stop performance to prevent
anticipated loss without becoming accountable for the dam-
ages caused by the interruption.  There was nothing in the
contract that authorized him to regulate the relative progress
of the cutting and drawing.  The only protection he pro-
vided for was the retention of one and one-half dollars per
thousand until the job was completed, which amounts to
nearly two hundred dollars on the logs delivered.  By the
course taken he assumed, not only to hold the money reserved
as a guaranty to secure the completion of the job, but so to
control the action of the plaintiff as to avoid all risk of in-
curring loss from an unsuccessful attempt to complete it.

It is clear that there were questions involved in the case
as presented that could not be disposed of by directing a ver-
dict for the defendant.

*Judgment reversed and cause remanded.*